# THE STATE OF MISSOURI *vs.* URIEL WRIGHT.—No. 87.

That provision — in the third section of an act of the General Assembly, entitled "an act to promote the payment of jurors in St. Louis county," approved January 29, 1847, which requires that a jury fee shall be taxed as part of the costs of every judgment rendered against a defendant in a criminal proceeding — is constitutional.

APPEAL FROM THE ST. LOUIS CRIMINAL COURT.

Judge BIRCH delivered the opinion of the court.

The court below having, upon the motion of the defendant, struck from the execution which was issued against him, upon a conviction for practising law without a license, the sum of three dollars which was taxed as a jury fee, under the 3d section of the act of 1847, "to promote the payment of jurors in St. Louis county." The circuit attorney has

appealed to this court, upon the question of the constitutional power of the general assembly, to authorize, and direct the payment of such a fee.

The reliance of the defendant, is based principally upon the 8th and 9th subdivisions of the 13th article of the constitution, commonly called the Declaration of Rights. By these it is enacted "that the right of trial by jury, shall remain inviolate," and "that in all criminal prosecutions the accused has the right to be heard by himself and his counsel; to have compulsory process for witnesses in his favor," and "to a speedy trial by an impartial jury," &c.

It must be apparent that to deny the Legislature, the power to impose a jury fee, carries along with it a denial to impose or prescribe a fee for the clerk who issues, and the sheriff who executes the "compulsory process for witnesses," for they are "rights" to which the accused, occupies precisely the same relation. To state such a proposition, is believed to be sufficient to suggest such consequences as to demonstrate; without argument, that such a construction of the constitution was never designed by its framers, and should not be adopted by the courts.

Juries are but as the courts themselves; part of the machinery of the constitution, and the Legislature, designed to promote and secure the great end of good government; and but for the specific *injunctions* of the constitution to the contrary, the judges too, like the jurors and other officers of the court, might receive their compensation in the shape of *fees* from the parties in default, instead of the "fixed" compensation to which it was deemed better to subject them. The reason for this need not be enlarged upon, it being sufficient to point to the fact that the framers of our system did not perceive the necessity of a similar enactment in reference to the *other* officers and adjuncts of the court, in order to preserve consistency with the other injunctions which has been relied on; namely, "that right and justice ought to be administered without sale, denial or delay."

Upon the whole, we do not deem that any of the great guaranties alluded to, have been invaded or violated by the legislation in question, and concerning the wisdom of the system, it is not our province to enquire or decide. We therefore content ourselves with reiterating what seems to have been the comparatively unobjected and undisturbed cotemporaneous and continuous exposition of those, and similar declarations in the American constitutions; namely, that the State had performed its duty when its legislation had furnished the forum and machinery through which those guaranties could be enforced, without requiring a farthing

in *advance* of the "impartial trial," which has been guarantied to every citizen. If such impartial trial shall result in a verdict to the effect that the citizen has offended "against the peace and dignity of the State," we are not prepared to say, even upon the score of public policy, that he should not be made, if able, to bear the expense of the trial to which he had subjected her.

For these reasons, the judgment of the criminal court is reversed.